[Cite as *State v. King*, 2011-Ohio-1018.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | Julie A. Edwards, P.J. |
|  | : | W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : | Case No. 10CA44 |
|  | : |  |
|  | : |  |
| MAURICE KING, III | : | O P I N I O N |
| Defendant-Appellant |  |  |




| CHARACTER OF PROCEEDING: | Criminal Appeal from Richland County Court of Common Pleas Case No. 2008-CR-374D |
|---|---|
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 4, 2011 |
| APPEARANCES: | |

For Plaintiff-Appellee

JAMES J. MAYER, JR.
Prosecuting Attorney
Richland County, Ohio

BY: KIRSTEN L. PSCHOLKA-GARTNER
Assistant Richland County Prosecutor
38 South Park Street
Mansfield, Ohio  44902

For Defendant-Appellant

ERIC J. ALLEN
The Law Office of Eric J. Allen, Ltd.
713 South Front Street
Columbus, Ohio  43206

*Edwards, P.J.*

{¶1}   Appellant, Maurice King, III, appeals a judgment of the Richland County Common Pleas Court dismissing his petition for postconviction relief.   Appellee is the State of Ohio.

## STATEMENT OF FACTS AND CASE

{¶2}   In 2007 and early 2008, appellant was a police officer in the town of Bellville in Richland County, Ohio.   In November, 2007, an informant for the Mansfield Police Department named Tommy Thompson informed Detective Eric Bosko that appellant was involved in purchasing various stolen items.   As a result of this tip, Detective Bosko initiated an investigation.

{¶3}   Detective Bosko arranged for Thompson to call appellant in December, 2007, and offer to sell him stolen crossbows.   Thompson called appellant, who agreed to look at the bows.   However, Detective Bosko was unable to procure any crossbows in the police department's evidence room for Thompson to show appellant.

{¶4}   Thompson then contacted appellant again on January 8, 2008, and informed appellant that he had several stolen firearms that he would be able to sell appellant.   Appellant and Thompson arranged to meet at appellant's home on January 10, 2008, so that appellant could examine the firearms.

{¶5}   On January 10, 2008, Thompson and an additional informant, James Soles, met with Mansfield police officers and Bureau of Alcohol, Tobacco, and Firearms agents at a Wal-Mart that was close in proximity to appellant's house.   The informants were fitted with recording devices and were given a .40 caliber Glock pistol, a 12-gauge shotgun, a semi-automatic SKS assault rifle and a fully automatic M-16 assault rifle from

the Mansfield Police department evidence room.  Thompson and Soles then drove to appellant's home on Possum Run Road, which is located in a rural part of Richland County.  Thompson and Soles were followed by police officers and ATF agents, who videotaped the meeting from a distance.

{¶6}  Upon arriving at appellant's house, Thompson introduced Soles as "Chicago," a man who had stolen the guns from a contractor in Cleveland.  Appellant put on a pair of gloves and inspected the guns.  Appellant negotiated a price of seven hundred dollars for the guns and used his cell phone to make several phone calls.  The calls were placed to his grandmother and to a friend who lived in the Rosalind area of Mansfield.   No one answered the phone on either of the calls, so appellant told the informants to return at 2:00 a.m. to complete the deal.   The informants then left appellant's home around 4:00 p.m.

{¶7}   At 4:31 p.m., appellant telephoned his friend, Keith Porch, a police officer with the Metrich Drug Enforcement Task Force.  Appellant told Porch that Thompson and an unknown Hispanic man had been at his residence attempting to sell him stolen guns.  He indicated to Porch that he made the men leave his residence and that the men stated that they were going to go to Mansfield to attempt to sell the guns. Appellant provided Porch with a vehicle description, but stated that he did not know the license plate number.  He also failed to advise Porch that he had scheduled the meeting or that he told the suspects to return to his house in the middle of the night.

{¶8}   Twenty minutes later, Thompson phoned appellant's cell phone, while in the presence of Detective Chad Brubaker, and left a message for him.  Subsequently, appellant returned Thompson's call and tried to negotiate the purchase of only the

Glock handgun. Thompson told appellant he would sell him the handgun for five hundred dollars.

{¶9} After this phone call, appellant again called Porch and informed him that Thompson had reduced the asking price for the guns. He informed Porch that he did not know Thompson's location. However, Thompson had told appellant previously that he was at home. Appellant did not give Porch Thompson's cell phone number, which he had in his possession. He also did not tell Porch that he attempted to make a second transaction with Thompson for only the Glock handgun.

{¶10} At 6:09 p.m., appellant called Thompson and informed him that his friend who was interested in the guns was out of town and would not return until January 31, 2008, and that he would call Thompson when his friend was available to complete the transaction. Two minutes later, Thompson called appellant back to confirm the details.

{¶11} At 6:18 p.m., appellant called Thompson back, sounding angry and questioning Thompson as to whether he had told Chicago appellant's name or that appellant was a police officer. Thompson assured him that he had not. Thompson also informed appellant that Soles had previously been arrested for selling crack cocaine, but that he did not have any current charges pending. Appellant stated that he would check Soles' record on public access, but not using his official access to the records database.

{¶12} Thompson called appellant several additional times over the next few days, attempting to complete the sale of the guns. On January 13, 2008, Thompson's call went directly to appellant's voicemail. On January 14, 2008, Thompson left two

additional messages on appellant's voicemail. Appellant failed to report these calls to his friend, Porch.

{¶13} On January 15, 2008, authorities executed a search warrant on appellant's residence on Possum Run Road. No stolen guns were identified. Appellant informed police that there was no stolen merchandise in his house. However, electronic equipment, a Razor electric scooter and an Ohio driver's license belonging to Dionne Goodwin were photographed and seized.

{¶14} Following the search of his home, appellant gave a statement to Detective Eric Bosko and stated that he did not have a reason why he agreed to buy stolen crossbows in December, 2007. He admitted that he had failed to report any of this suspicious or illegal activity to Chief Ron Willey of the Bellville Police Department. He also stated that he did not tell Detective Porch the whole story for fear of his family's safety. He also admitted that he scheduled the date, time and location of the meeting regarding the stolen firearms and that he failed to notify any law enforcement agency of the meeting.

{¶15} As a result of the investigation, appellant was charged with one count of attempted receiving stolen property, a misdemeanor of the second degree, one count of possessing criminal tools, a misdemeanor of the first degree and one count of dereliction of duty, a misdemeanor of the second degree, relating to the December, 2007, attempt to purchase stolen crossbows. He was also charged with three counts of attempted receiving stolen property, felonies of the fifth degree, one count of attempted unlawful possession of a dangerous ordinance, a misdemeanor of the first degree, one count of possessing criminal tools, a felony of the fifth degree, one count of dereliction

of duty, a misdemeanor of the second degree, and one count of failure to report a crime, a misdemeanor of the fourth degree, relating to the January, 2008, attempt to purchase stolen guns. Appellant was also charged with one count of receiving stolen property, a misdemeanor of the first degree, relating to the driver's license discovered in his home on January 15, 2008.

{¶16} Appellant was initially tried on September 4 through September 11, 2008. During that trial, appellant took the stand in his own defense. The trial concluded with the jury acquitting appellant of the misdemeanor charges relating to the attempt to purchase the stolen crossbows and the possession of the stolen driver's license. The jury was unable to reach a verdict on the remaining charges.

{¶17} Appellant was tried a second time on December 11, 2008, through December 18, 2008, on the remaining charges related to the attempted possession of the guns. Appellant did not take the stand in the second trial; however, several of appellant's statements were used when the defense called Keith Porch to the stand in appellant's case in chief. Appellant was found guilty of three counts of attempted receiving stolen property, one count of attempted unlawful possession of a dangerous ordinance, one count of possessing criminal tools; one count of dereliction of duty and one count of failure to report a crime. He was sentenced to twenty-two months in prison.

{¶18} Appellant filed an appeal with this Court. His appeal was dismissed for want of prosecution on October 21, 2009. The appeal was reopened on December 7, 2009. The judgment of conviction and sentence was affirmed by this Court on September 21, 2010. *State v. King*, Richland App. No. 08-CA-335, 2010-Ohio-4844.

{¶19} Appellant filed a petition for postconviction relief on October 16, 2009. Appellant claimed in part that Larry Davis, Jr. committed perjury during appellant's trial as a result of an undisclosed deal with the State to reduce Davis's prison time on a case in Holmes County. Attached to the motion was a letter Davis allegedly wrote to a former cellmate, complaining that he did not get time off his sentence for testifying against appellant. The court held an evidentiary hearing on this claim. Following the hearing, the court found appellant's claim to be without merit and dismissed his petition. He assigns a single error on appeal:

{¶20} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S PETITION FOR POSTCONVICTION RELIEF."

{¶21} A trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence. *State v. White*,118 Ohio St.3d 12, 19, 885 N.E.2d 905, 2008-Ohio-1623, citing *State v. Gondor*, 112 Ohio St.3d 377, 860 N.E.2d 77, 2006-Ohio-6679. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144, citing *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855; see, also, *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶22} Appellant has not demonstrated that the court abused its discretion in dismissing his petition for postconviction relief. The only evidence appellant presented at trial concerning a secret deal between Davis and the State whereby Davis would

commit perjury in appellant's case was the testimony of Davis's former girlfriend, Cindy Wolfe. She claimed that she knew Davis was going to lie in appellant's trial in order to reduce his sentence on a case pending in Holmes County. However, Wolfe was herself convicted of several felonies connected to the crimes which Davis committed and had previously been romantically involved with Davis. While is it not clear from the record whether the court considered the letter appellant mailed to his former cellmate, Zachariah Fretwell, as evidence, nothing in the letter demonstrates that Davis lied when he testified at appellant's trial. While in the letter he expressed displeasure that his prison time in Holmes County was not reduced by his cooperation with Richland County authorities, at the hearing, Davis testified that he wouldn't say the letter was true, it was "just guys bullshitting." Tr. 39.

{¶23} The State presented evidence through the testimony of Captain Eric Bosko of the Richland County Sherriff's Department that he agreed to call Holmes County authorities and inform them that Davis had cooperated with the State in appellant's trial. He testified that he did make such phone call, but Davis had already been convicted and sentenced on his Holmes County case prior to his testimony in appellant's second trial. Sgt. Roger Estill of the Millersburg Police Dept. testified that he did receive this message from Capt. Bosko, but there was no conversation or agreement regarding dismissing the charges against Davis in exchange for his testimony in appellant's case.

{¶24} The trial court was in a better position than this Court to judge credibility of witnesses. We cannot find that the court abused its discretion in dismissing appellant's petition for postconviction relief. The assignment of error is overruled.

{¶25} The judgment of the Richland County Common Pleas Court is affirmed.

By: Edwards, P.J.

Gwin, J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/r1124

[Cite as *State v. King*, 2011-Ohio-1018.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MAURICE KING, III | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 10CA44 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed.  Costs assessed to appellant.

_____

_____

_____

JUDGES